Mr. Justice MacArthur
delivered the opinion of the court, in substance as follows:
The question principally discussed at the hearing, was whether the insurance company was a bona-fide purchaser for a valuable consideration, and without notice of the complainant’s existing equities. The notice which is imputed to the company is not actual knowledge that the property in dispute was in fact incumbered by a previous equity in favor of complainant, but a notice with which they are to be charged, growingout of the fact and circumstances of the transaction, within the knowledge of their alleged agent, in procuring the fraudulent discharge of the trust deed by Mr. "Ward. This can only be determined upon the facts of the case. For this purpose we need not consider any of the circumstances in proof, except those involved upon this point of the controversy.
Henry II. Dudley was seized originally of all this estate, and executed thereon a deed of trust to one Joseph H. Black-fan to secure two notes of $3,500 each. One of these notes was paid, and the other became the property of the Arlington Fire Insurance Company; and the evidence relating to all this will not be further noticed, as they are not facts essential for our consideration.
Dudley conveyed his equity of redemption to John Van Riswick, who ou the 10th of November, 1871, conveyed to ■George B. Coburn for $7,734.40, for which Coburn made his three promissory notes to Van Riswick for $2,578.13 each, ¡payable in one, two, and three years respectively, with seven per cent, interest, secured by a deed of trust to "William H. Ward.
On June 15,1872, the firm of Aistrop & Dudley borrowed '$4,000 from the complainant, and made their note to him therefor, payable in sixty days, and as collateral security they procured Van Riswick to endorse two of the three Coburn notes to Eldridge, without recourse. Coburn meanwhile had conveyed the property to one Edwin E. Mayhew, who subdivided it into lots from 50 to 65.
*309 At the time Mayhew obtained a loan from the Connecticut General Life Insurance Company, the Coburn deed of trust to Ward was a subsisting incumbrance, and the complainant held two of the three notes secured by it as collateral to the note of Aistrop & Dudley for $4,000, no part of which has ever been paid. The trustee therein executed a release of the same, without the knowledge and consent of complainant, in order that the company might have a prior lien as security for the loan which they had negotiated to Mayhew. The complainant files this bill for the purpose of vacating this release, and the controversy between him and the insurance company is as to which of them shall sustain the loSs arising from this fraudulent discharge. Whether the insurance company is to be considered a bona-fide purchaser, depends upon the question of notice, either to the company or its agent, of complainant’s interest. If the company is to be charged with such notice, the prayer of the bill must be granted, according to well settled principles of courts of equity. This is not a case of actual notice. It is a case of notice to an agent, which, however, if it exist, is equally fatal to the rights of the insurance company as a subsequent purchaser. Our opinion assumes that the proofs establish the fact that Bigelow, who conducted the loan, was the agent of the company, and they are affected as principal by his knowledge. It frequently happens that in purchases of real estate, and in negotiations for investing money in real-estate securities, the same agent acts for both parties; and it is uniformly held that both parties shall be intended to know whatever is in the knowledge of the agent thus mutually intrusted by them, and each principal is affected with notice as much as if different agents had been employed. (Dryden v. Frost, 3 Myl. & Cr., 670; Dunlap’s Paley’s Agency, 263, note.) The company advanced the money which constituted the loan to Mayhew, the borrower. The company relied upon Bigelow to transact the business in their interest, to see to the proper mode of investment, to employ a competent person to examine the title, to have the prior incumbrance paid off) and to effect a large amount of life insurance *310 as part of tbe consideration. In a word, he was the common agent of the borrower and lender; and any notice to him operated constructively as a notice to his employers. The attempt which was made in the testimony to separate his acts into those which he performed for each of the principals in the same transaction, was entirely unsatisfactory; and the effort to make this distinction has only served to show that there is no ground for it in this or any similar ease. The only practical rule to apply in such transactions, is that when the same agent is employed by both parties they are equally bound by his acts, and by any knowledge he may have acquired in regard to the rights of other persons. The conclusion, I think, is inevitable from the circumstances of the transaction we are investigating, that Bigelow is properly considered as the agent of the company as well as of Mayhew.
It is a rule in equity that a principal is affected by any notice communicated to the agent, or by any knowledge which he has acquired in reference to the business of the agency. It would be useless to cite authorities to a doctrine so familiar. And it is equally true that whatever is sufficient to put a party upon inquiry, is held in equity to be good notice to bind him. (1 Story Eq. Jur., sec. 399.) Now, according to this principle the knowledge of Bigelow, or any notice to him, must be imputed to the company, and is as binding upon them as if they actually knew of the fact. Notice to an agent in making a purchase of real estate affects his employer. (Norris v. Lee, 3 Atk., 23.) The trust deed to William II. Ward was of record, and it disclosed the interest of the cestui que trust. It was, moreover, a naked trust, giving no discretion to the trustee other than to execute the powers therein specified; one of these being the authority to release it upon payment of the indebtedness thereby secured. In this particular he was clothed with no discretion, his only duty and power being to execute a discharge when the notes were paid. It is also a rule in equity that notice of a deed is notice of its contents, and notice to an agent is notice to his principal; (4 Kent Comm., 179;) and in this particular case it seems quite im *311 material whether the company is chargeable directly, or through their agent Bigelow, who acted for them in this transaction, with having a knowledge of this instrument; in either case they cannot hold against the prior equitable title of the complainant. They were equally bound to know the fact that Ward was not authorized to discharge the incumbrance unless upon payment of the debt. The facts upon this branch of the case are not the subject of much doubt or dispute. We have seen that the two notes held by the complainant as collateral had been transferred to him by John Van Riswick at the request of Dudley & Aistrop, he retaining the one first falling due. At the time the release was executed, Van Riswick attended before the trustee as holder of that note, and Dudley & Aistrop, or one of them, were present, claiming to be the owners of the other two notes. These were not only not paid — they were not even produced. It appears that Dudley had previously informed Bigelow that his firm owned these two notes, that they were in possession of another party, but that they could control them, and gave him to understand that the person holding them had some claim upon the notes, but that they would satisfy it, and concluded by remarking .- “I will make it all right with Ward, the trustee.” Bigelow then testifies: “ It was that remark that led me to suspect that the party who had the notes might have some claim upon them.” The communication of these circumstances to Bigelow, by the very person with whom he was contracting, was full of suggestion. The notes were not then due; they were-outstanding in the hands of another person. It is not merely presumed that Bigelow had this information; the facts were communicated to him in person by a party who claimed to own the notes, and who declared he could make it all right with the trustee. There was not only strong ground for suspicion, but the witness testifies to his impression that the holder of the notes had an interest in them of some kind. No mind under the same circumstances could help coming to the same conclusion. He had clearly sufficient information to put him upon inquiry and the exercise of diligence; he was bound to inform *312 himself. “ The general doctrine is, that whatever puts a party upon inquiry amounts in judgment of law to notice, provided the inquiry becomes a duty, as in the ease of purchasers and creditors, and would lead to a knowledge of the requisite fact by the exercise of ordinary diligence and understanding.” (4 Kent Comm., 179.) This doctrine is quite applicable to the circumstances of this ease. Bigelow acknowledges that his suspicions were excited, and we cannot fail to see that' the exercise of ordinary diligence would have put him in full possession of knowledge concerning the equities of prior parties. He avoided this knowledge by abstaining from all inquiry, and through his negligence, to say the least of it, this iniquitous fraud was perpetrated. He never saw the notes, he kne.w they were not paid, and could not be paid till they were due, without the consent of the party holding them. Under these circumstances he is not only to be charged with a knowledge of all the facts he might have ascertained by inquiry, but the company is to be credited in the same way and to the same extent. The equities between the two litigating parties to this controversy are quite similar. The defendant advanced a large sum of money without actual knowledge of the fraud and circumvention by which a trust deed had been discharged, and the complainant was entirely ignorant of the whole transaction until long after it was consummated. The claims of both to the equitable consideration of the court are almost equally strong. They appear to be innocent of actual fraud; but, upon the principles just explained, I concur in the judgment which reinstates the rights of the complainant, and to that extent postpones those of the defendant.
The same observations are applicable in great measure to another feature of this case. A primary object of the insurance company was to obtain, if possible, a first incumbrance upon the property in view of the large amount of the loan. Bigelow was therefore instructed to look well to the state of the property and the discharge of existing liens, and for this purpose to employ a competent person to examine the title. He employed Mr. Ward, who was the trustee in the trust deed *313 from Coburn, and for this service Ward received $100 paid out of the loan.
His employment to abstract the title of this property was entirely independent from the duties devolving upon him as trustee, and in that matter he is exclusively to be regarded as the agent of the company. We have seen how limited were the powers conferred upon Ward by the trust deed, and that the release he made was in no just sense an execution of these powers. Ward, of course, must be intended by law to have known the contents of that deed, and the restricted powers it conferred upon him, and yet, after having discharged the security at the request and upon the statements of entire strangers to the record, when he knew that the outstanding notes had neither been paid nor cancelled, he certified the property as free from this incumbrance, without the knowledge or consent of the real parties in interest. We perceive the grossest negligence and irregularity in this conduct; and while it is a matter of regret that innocent parties should be made to suffer the consequences, yet we cannot fail to see that Ward was acting in this regard as the attorney or agent of the company alone, and they are, therefore, chargeable with his knowledge concerning the contents of the deed, and that he had no right to execute the release, or give the certificate of title which he furnished at their request. It is settled by the authorities cited in complainant’s brief, that a mortgagee with knowledge of the fraudulent discharge of a prior mortgage is not a bona-fide purchaser. J3y the principles of law already explained, the defendant is to be charged with such notice or knowledge as Ward had acquired upon the subject of the title; and if this is correct, and I do not see but that it is, the conclusion follows that the company do not occupy the position of a purchaser without notice. The company, by operation of law, is bound by the notice acquired by its representatives in Washington; so that, in either point of view, the complainant is entitled to the benefit of his security.
■ It was urged on the argument that Ward was the trusted agent of the cestui que trust, that they had clothed him with *314 authority to release the deed, and they were concluded by his act, especially as the company had taken their conveyance in good faith. It is scarcely necessary to discuss this view after what has been said. Precisely the same circumstance existed in Burnstine v. Ormes, 2 MacA., 219, which has since been affirmed at the October term of the Supreme Court. There the payee in the note, who had passed it away, repi’esented that he was still the holder thereof, and fraudulently procured Ward to execute ^release of the trust deed, and afterwards, as in this case, a second deed of trust was executed upon the property to secure this insurance company upon a loan of money.
The release was set aside and the first trust deed restored to its priority. The point now under consideration was neither discussed nor decided. The silence of both this court and the Supreme Court is significant that the point was not deemed material. In the present case, however, the employment of Ward by the company is so clearly established by the. proofs that our decision in the present case should not vary from that made in Burnstine v. Ormes, upon the strength of this additional circumstance.
The judge further expressed an opinion that a decree against Aistrop & Dudley for the amount due upon their note to complainant might be entered in this case, with a direction that the company might be subrogated to any benefit arising therefrom upon satisfying complainant’s claim.